LENA A. NICHOLS, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 31450.)

Third Department, July 7, 1955.

*William D. Kiley* and *Roy L. Smith* for appellant.

*Jacob K. Javits, Attorney-General (John R. Davison* and *Henry S. Manley* of counsel), for respondent.

FOSTER, P. J. Claimant appeals from a judgment of the Court of Claims which dismissed her claim for damages for personal injuries sustained when she fell on a macadam path in the Chittenango Falls State Park, Madison County, New York.

At the time of the accident claimant was 74 years of age. She went with members of her family to the park on July 4, 1951, arriving there about noon. The party parked their car in an area referred to as the upper level. There were picnic tables in

that area but all of them were occupied at the time, and so claimant's daughter-in-law and granddaughter walked down a macadam path to the lower level. This was the path where the accident happened. There is a map in evidence which shows the course of the path, but no photographs were taken because some time after the accident the path was reconstructed.

It may be seen from the map that the path after it reaches a point designated as '' C '' turns sharply to the left. After her daughter-in-law and granddaughter had gone down the path claimant went down herself alone. She testified that when she reached the sharp turn to the left she found quite an incline and there she began to slide and was unable to save herself from falling. The path had a macadam surface and two members of claimant's family testified that it was smooth and slippery. The map indicates that the upper part of the path had a grade of about 15.6%, and after the turn the grade increased to 26.2%. There were no handrails on either side of the path. Before the accident there were no steps along the path but afterwards steps were cut into it as shown by the map which is the only exhibit in the case.

The court below dismissed the claim on three grounds: (1) Claimant was guilty of contributory negligence because she was in a position to observe any potential danger: (2) That the physical construction and condition of the path were not such as to make it hazardous: (3) That its surface was not slippery or glossy. The Trial Judge said in his decision: '' The frequent use of the road without similar accident, considered together with the credible testimony of the superintendent of the park that the road was not slippery or glossy and that it had been sanded, is more reassuring.'' The superintendent of the park, John R. Tweedy, did testify that the path was not smooth in appearance and later he said that he meant that there was no high gloss to it. But it would appear that sanding had little or nothing to do with the situation because sand was put on top of the surface of the path in 1950, which was a year before the accident.

Claimant produced an engineer who testified that the path, or ramp as he characterized it, was not constructed in accordance with good or safe practice. He based his opinion on three elements — the severity of the slope, the lack of handrails along the edge of the path — together with the nature of its surface. The State produced no engineering testimony to offset this.

In our opinion the claimant made out a credible case and should have had an award. The park was a public institution for which an admission fee was charged. Claimant was clearly an

invitee. The path in question had been artificially constructed and the State was under a duty to see that it was constructed and maintained in a reasonably safe condition. The theory that claimant using such a path did so at her peril because she could see ahead stretches the doctrine of contributory negligence too far. And as a matter of fact the testimony indicates that there were trees and bushes on the inside of the curve which in all probability obstructed her view to some extent, and in this connection it should be noted that the steep and really dangerous part of the path did not begin until it reached a point at or beyond the apex of the curve. Significance must be given to the failure of the State to rebut the testimony of claimant's engineer that the path was not constructed in accordance with good practice. The testimony of the park superintendent was somewhat equivocal. He did not say the path was not slippery. He merely said it was not glossy in appearance. And the sanding which he mentioned was something done more than a year before.

It is true of course that the State is not an insurer of those who make use of its parks but it does have the obligation to exercise reasonable care in the construction and maintenance of any public ways which visitors are invited to use. Measured by this test the State was, in our opinion, remiss in its duty to the claimant and she should have an award. She sustained a laceration across the bridge of her nose, her left leg and right knee were contused and she had a sprained right ankle. The most serious injury however was an impacted fracture in the upper third of her left arm. This condition has healed but she has some limitation of motion. Her special damages amounted to $499.25.

The judgment of dismissal should be reversed, with costs, and judgment for the claimant directed in the sum of $7,500.

BERGAN, J. P., COON, IMRIE and ZELLER, JJ., concur.

Judgment of dismissal reversed, with costs, and judgment for the claimant directed by this court in the sum of $7,500.

Settle order on notice.